IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JOSE M. LORIE-VELASCO ET AL**
   **Plaintiffs**

   **v.**

**K-MART CORPORATION**
   **Defendant**

**Civil No. 98-1867 (PG)**

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

The Court has before it plaintiffs' "Motion in Limine to Exclude Portions of Report and Testimony of Dr. José Eugenio Villanueva" (**Docket No. 149**) and "Defendant's Opposition to Motion in Limine to Exclude Portions of Report and Testimony of Dr. José Eugenio Villanueva" (**Docket No. 156**). Plaintiffs have sued defendant K-Mart because on February 8, 1998, plaintiff José M. Lorie Velasco (hereafter "Lorie") slipped and fell in one of K-Mart's department stores due to its allegedly negligent maintenance of its floors (**Docket No. 113**). Plaintiffs allege that the injuries Lorie sustained as a result of the accident have caused him to experience erectile dysfunction (*Id.*).

Plaintiffs argue in their motion in limine that the Court should limit the testimony of K-Mart's psychiatric expert witness, Dr. José Eugenio Villanueva (hereafter "Dr. Villanueva"), in two ways. First, they argue that the Court should not allow Dr. Villanueva to testify about the causal relationship between high levels of prolactin (a lactation hormone[1]) and erectile dysfunction because it is outside his field of expertise. Second, they argue that the Court should not allow him to express to the jury

---

[1] According to *Stedman's Medical Dictionary* 1436 (26th ed. 1995), prolactin is a "protein hormone . . . that stimulates the secretion of milk and possibly, during pregnancy, breast growth."

Civil No. 98-1867 (PG)                                                                                                   Page No. 2

his opinion that plaintiff Lorie has a selective memory, and has falsified information, with respect to his medical history. Defendant argues in opposition that the relationship between prolactin and impotence is within Dr. Villanueva's expertise as a medical doctor and that Lorie's false statements to Dr. Villanueva are admissible because they were a factor in Dr. Villanueva's diagnosis of Lorie's mental condition.

I.      ANALYSIS

   A.      The Scope of Dr. Villanueva's Expertise

Under Federal Rule of Evidence 702, an expert witness may testify if he is "qualified as an expert by knowledge, skill, experience, training, or education . . ." However, the First Circuit does not require a physician to be a specialist in the area of his testimony in order to be an expert under Rule 702. The fact that the physician is not a specialist in the field in which he is giving his opinion affects the weight a jury may place upon his opinion, but not its admissibility. *Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir. 1985) (citation omitted) (holding that district court did not abuse its discretion in permitting two doctors without specialized training to give expert testimony on the causal link between the drug diethylstilbestrol ("DES") and the plaintiff's infertility because it was scientific knowledge that was part of the general field of medicine and, though neither doctor had done systematic research, both had studied some articles on the topic and had seen patients with DES-related problems); *see also Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975) (holding that a physician is qualified to give an opinion as to someone's mental health even if the physician is not a psychiatrist); *Snead v. United States*, 595 F. Supp. 658, 663 (D.C.D.C. 1984) ("a physician need not be a specialist in the field of which he speaks in order to testify . . . and specialization goes to the weight rather than to the admissibility" (citation omitted)).

In this case, plaintiffs have conceded that Dr. Villanueva is qualified to testify as an expert psychiatrist (**Docket 149**, p. 6). Therefore, as a trained medical doctor, First Circuit precedent does not require Dr. Villanueva to be specialized in urology or endocrinology to testify in general broad terms about any relationship between prolactin and impotence. Also, according to his deposition, the relationship between this medication and its possible collateral effect is well-known among psychiatrists and "the reason [psychiatrists] know that is because there are some psychiatric medications, like Mellaril and Thioridazine, that increase the level of prolactin and they produce impotence too" (**Docket No. 156**, Untitled Exhibit, p. 48). More so, Dr. Villanueva also testified during his deposition that some of his own patients have become impotent due to the increased levels of prolactin they experienced after taking high doses of certain medications (*Id.* at 81). Finally, Dr. Villanueva has indicated he has researched the matter and found two research articles that confirmed that impotence may result from increased levels of prolactin (*Id.* at 47-48). Accordingly, the Court should, therefore, find that Dr. Villanueva is qualified to testify, generally, about the relationship between prolactin and erectile dysfunction.

However, it must be made clear that Dr. Villanueva has not concluded that plaintiff's impotence has been caused by any given factor; is not an expert in the field of endicronology; and does not consider himself an expert in any other field other than psychiatry (**Docket No. 149**, Exh. A, Exh. B, pp. 48 and 56). More so, Dr. Villanueva has not established and may not testify as to any correlation between plaintiff's erectile dysfunction and the use of Parlodal, inasmuch as Dr. Villanueva has acknowledged that: (a) plaintiff is not his patient; (b) he is not aware when it was that plaintiff began to use hyperprolactemia; and (c) there is no data regarding dosages prescribed to plaintiff, blood chemistry analysis, levels of prolactin within plaintiff's blood stream (**Docket No. 149**, Exh. B, pp. 55-58, 80-82). Thus, it is clear that Dr. Villanueva's testimony may not extend to

Civil No. 98-1867 (PG) Page No. 4

and is not relevant to any inquiry regarding the cause of plaintiff's impotence and erectile dysfunction.

### B.   Dr. Villanueva's Testimony Regarding Lorie's False Statements

A proposed expert witness must be qualified to testify as an expert by knowledge, skill, experience, training or education.

To be admissible under Federal Rule of Evidence 702, a proposed expert witness's testimony (1) must concern "scientific, technical, or other specialized knowledge" and (2) must "assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. González-Maldonado*, 115 F.3d 9, 16 (1st Cir. 1997) (quoting Fed.R.Evid. 702). In other words, "it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Corey*, 207 F.3d 84, 97 n.12 (1st Cir. 2000) (citation omitted).

In this light, according to the First Circuit, "an expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." *United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995). Indeed, if an expert's pointing out that someone is lying merely "duplicates the jury's knowledge, Rule 403 might counsel exclusion of the expert testimony to avoid the risk of unduly influencing the jury." *United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996).

Dr. Villanueva's report reveals that Lorie had cervical problems and erectile dysfunction prior to his accident at K-Mart and that he, nonetheless, denied having those problems until after the accident (**Docket 149**, p. 5). Based upon these inconsistencies, Dr. Villanueva testified during his

deposition that he thought Lorie had a "selective memory" and that he "falsifie[d] information" (*Id.*). Plaintiffs argue that Dr. Villanueva's characterization of Lorie's truthfulness has no connection to Dr. Villanueva's expert diagnosis of Lorie's mental state and that the jury is equipped to assess Lorie's credibility without Dr. Villanueva's expert help. We agree. It is true Dr. Villanueva found that Lorie had either concealed some medical data or provided inconsistent information in this regard. However, it is also true that this factor is not relevant to any diagnosis he made as a psychiatrist and does not relate to a matter as to which the jury will need particular guidance or enlightenment from an expert.

Defendant's opposition motion devotes two short, conclusory and vague paragraphs in defending the admissibility of Dr. Villanueva's testimony with respect to Lorie's false statements (**Docket No. 156**, p. 3-4). The crux of its argument appears to be simply that Lorie's inconsistent statements are "another factor that as a psychiatrist, Dr. [Villanueva] has to take into account in order to assess plaintiff's metal [sic] condition . . ." (*Id.* at 3). Whether or not there is a connection between Lorie's statements and his mental diagnosis, defendant does not make any attempt to explain such a connection. Moreover, defendant does not show how Dr. Villanueva's testifying to the jury that plaintiff Lorie made false statements would assist the jury in understanding any issues or facts relevant to this case or how it involves any of Dr. Villanueva's medical expertise.

Lorie's false statements only appear relevant to his credibility, and the First Circuit in *Shay, supra,* made it clear that issues of credibility are not admissible as expert testimony under Rule 702. Especially, in light of the highly prejudicial effect such expert testimony would likely have, the Court should not allow Dr. Villanueva to testify about Lorie's false statements regarding his medical history. *See* Fed.R.Evid. 403.

Apart from the merits of plaintiff's motion in limine, the Court should also exclude the relevant portions of Dr. Villanueva's testimony because defendant failed to respond adequately to plaintiffs' motion and "[c]onclusory statements without any explanation why the expert can contribute to the jury's understanding of the subject are . . . subject to exclusion." *United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996). Furthermore, defendant does not marshal any evidence nor cite any legal authority to defend its position. Its opposition motion, therefore, violates Civil Local Rule 7(b), which holds that an "opposing party shall be deemed to have waived objection" to a motion if its opposition motion fails to incorporate a memorandum of law that "include[s] citations and supporting authorities and affidavits and other documents setting forth or evidencing facts on which the objection is based." In light of the deficiency of its motion, the Court should deem defendant's objection to plaintiff's motion in limine waived with respect to the admissibility of Dr. Villanueva's testimony regarding Lorie's truthfulness.

## II.     CONCLUSION

It is therefore **RECOMMENDED** that while the Court may allow the testimony of defendant's psychiatric expert, Dr. Villanueva, with respect to the causal relationship between prolactin and erectile dysfunction, this in general medical terms, it must **EXCLUDE** his testimony with respect to any of plaintiff Lorie's false statements or inconsistent statement or any assessment regarding plaintiff's credibility. More so, Dr. Villanueva's expert testimony is not to be allowed in regards to the cause of plaintiff's physical condition, inasmuch as Dr. Villanueva is not privy to plaintiff's medical condition, is not his treatment physician, and is not an expert in endocrinology.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with

the Clerk of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, on this 31st day of March, 2004.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**