**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

```
JOSE M. LORIE-VELASCO,        *
ET AL.,                       *
        Plaintiffs,           *
                              *
        v.                    *        Civil No. 98-1867(PG)
                              *
K-MART CORPORATION, ET AL.,   *
        Defendants.           *
```

## OPINION AND ORDER

Before the Court is U.S. Magistrate Judge Aida M. Delgado-Colon's Report and Recommendation ("R&R") (Docket No. 191) regarding Plaintiff Jose M. Lorie-Velasco's ("Lorie") Motion in Limine.  The Magistrate recommends that we grant Lorie's motion.  Also before the Court is Defendants K-mart Corporation's ("K-mart") Objections to the Magistrate's R&R. For the following reasons, Court approves that R&R.

## DISCUSSION

### I.  Factual Background

This suit arises out of Lorie's slip and fall accident at one of K-mart's stores on February 8, 1998.  (Docket No. 113.) Lorie claims he fell due to K-mart's negligent maintenance of its floors and that as a result of the accident he has experienced erectile dysfunction. (Docket No. 113.)

Lorie filed a Motion in Limine to exclude portions of the report and testimony of K-mart's expert witness Dr. Jose Villanueva ("Dr. Villanueva"), a psychiatrist.  Lorie argues that the Court should limit Dr. Villanueva's testimony about the casual

Civil No. 98-1867(PG)                                           2

relationship between high levels of prolactin[1] (a lactation hormone) and erectile dysfunction inasmuch as it is outside Dr. Villanueva's field of expertise.   Likewise, Lorie argues that the Court should not allow Dr. Villanueva's testimony with regards to his opinion that Lorie has selective memory and has falsified information with respect to his medical history.

K-mart argues that the testimony should be allowed because it is within Dr. Villanueva's medical expertise to testify about the relationship between prolactin and impotence.   It further claims that Lorie's false statements are admissible because they were a factor in Dr. Villanueva's diagnosis of Lorie's mental condition.

## II. Analysis

### A.  Scope of Dr. Villanueva's testimony with regards to the relationship between prolactin and erectile dysfunction

The Magistrate Judge found that First Circuit precedent does not require Dr. Villanueva to be specialized in urology or endocrinology to testify in general broad terms about any relationship between prolactin and impotence. (See Report and Recommendation, Docket No. at 2-3.)   The Magistrate Judge found, however, that Dr. Villanueva's testimony is not relevant to any inquiry regarding the cause of Lorie's impotence and erectile dysfunction. (Id. at 3-4.)   The reason being that Dr. Villanueva has not established any correlation between Lorie's erectile dysfunction and the latter's use of the medication Parlodal that

---

[1]      According to *Stedman's Medical Dictionary* 1436 (26th ed. 1995), prolactin is a "protein hormone . . . that stimulates the secretion of milk and possibly, during pregnancy, breast growth."

Civil No. 98-1867(PG)                                              3

contains prolactin.

Kmart objects to the Magistrate Judge's recommendation arguing that it is within Dr. Villanueva's scope of expertise to assess whether Lorie's alleged erectile dysfunction is related to the fall at issue. K-mart also argues that the Court should admit Dr. Villanueva's assessment and testimony regarding the specific relation between the use of prolactin and Lorie's impotence. K-mart contends that the Court should admit Dr. Villanueva's opinion on whether the cause of Lorie's erectile dysfunction "was neurogenic or psychogenic, as related to Lorie's mental condition, and to the alleged causal connection between the incident and the erectile dysfunction". (See Objection to R&R, Docket No. 195 at 7.)

Upon reviewing the record, the Court agrees with the Magistrate's conclusion that Dr. Villanueva's testimony is not relevant to any inquiry regarding the cause of Lorie's impotence and erectile dysfunction. Dr. Villanueva has not established any correlation between Lorie's erectile dysfunction and the use of prolactin. (See Docket 156, Exhibit I at 81-82.) Dr. Villanueva specifically acknowledged in his deposition that although he had medical information regarding the relationship between parlodel and impotence he was "in no moment at all, . . . saying that [plaintiff's] impotence is produced by [prolactin]. (Id. at 81.) Moreover, Dr. Villanueva acknowledged that he did not have the basis for that conclusion inasmuch as he had no evidence regarding when Lorie began using Parlodel, dosages prescribed to him, or blood chemistry analysis and levels of prolactin within Lorie's blood stream. (Id. at 82.)

Dr. Villanueva claims he is not an expert in the field of

Civil No. 98-1867(PG)                                                    4

endocrinology; and does not consider himself and expert in any other field other than psychiatry. The relationship between prolactin and its possible collateral effects is well- known among psychiatrists. Dr. Villanueva has researched the matter and found two articles that confirmed that impotence may result from increased levels of prolactin.  Therefore, Dr. Villanueva is qualified to testify generally about the relationship between prolactin and erectile dysfunction but not as to the definite cause of plaintiff's impotence.

> **B.  Dr. Villanueva's testimony regarding his opinion that Lorie has selective memory and falsified information with respect to his medical history.**

Lorie argues that Dr. Villanueva's characterization of his truthfulness has no connection to the diagnosis of Lorie's mental state.  Furthermore, that the jury is equipped to assess Lorie's credibility without Dr. Villanueva's expert help.

The Magistrate Judge agrees with the plaintiff and recommends that the Court not allow Dr. Villanueva to testify about Lorie's false statements regarding his medical history.  The Magistrate Judge found that the fact that Lorie had concealed some medical data or provided inconsistent information is not relevant to any diagnosis Dr. Villanueva made as a psychiatrist and does not relate to a matter to which the jury will need particular guidance or enlightenment from an expert.

K-mart objects to the Magistrate Judge's conclusion claiming more or less the same arguments raised in their opposition to the motion in limine. They basically argue that Lorie's inconsistencies or concealed information are but another factor that Dr. Villanueva considered in order to assess Lorie's mental condition.

Civil No. 98-1867(PG)                                                5

      Pursuant to Federal Rule of Evidence 702, and expert who is
"qualified as an expert by knowledge, skill, experience, training,
or education"  may  testify  only  if  the  expert's  scientific,
technical, or other specialized knowledge "will assist the trier of
fact to understand the evidence or to determine a fact in issue".
See  Fed.  R.  Evid.  702.    See also  Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993).    To ascertain
whether an expert's testimony will assist the trier of fact, the
Court must resolve "whether the untrained layman would be qualified
to determine intelligently and to the best degree, the particular
issue  without  enlightenment  from  those  having  a  special
understanding of the subject matter involved."  United States v.
Gonzalez-Maldonado, 115 F.3d 9, 16 (1st Cir. 1997).

      Upon reviewing the record, the Court agrees with the Magistrate
Judge that Lorie's false statements only appear relevant to his
credibility and not to any facts at issue.  Dr. Villanueva does not
point to any connection between Lorie's statements and his diagnosis
of Lorie's mental condition.  Moreover, K-mart fails to show how Dr.
Villanueva's  testimony  regarding  Lorie's  inconsistencies  would
assist the jury in understanding any issues of facts relevant to the
case.    The  jury  can  assess  Lorie's  credibility  without  Dr.
Villanueva's expert help.

      The First Circuit has established that, "an expert's opinion
that another witness is lying or telling the truth is ordinarily
inadmissible pursuant to Rule 702 because the opinion exceeds the
scope of the expert's specialized knowledge and therefore merely
informs the jury that it should reach a particular conclusion."
United States v. Shay, 57 F.3d 126, 131 (1st Cir. 1995).  Since

Civil No. 98-1867(PG)                                                      6

Lorie's inconsistencies or false statements are only relevant to his credibility, Dr. Villanueva's expert testimony is inadmissible with regards to those statements.

Furthermore, Dr. Villanueva testimony regarding Lorie's false statements about his medical history would have a highly prejudicial effect and could mislead the jury.  Pursuant to Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403.  The Court believes Rule 403 further counsels toward excluding the testimony.

In sum, the Court concurs with the Magistrate Judge's recommendation that under both Rule 702 and Rule 403, the Court should not allow Dr. Villanueva to testify about Lorie's false statements regarding his medical history.

### III.  Defendant's violation of Local Rules.

The Magistrate Judge also recommends, in the alternative, that the Court exclude Dr. Villanueva's testimony regarding Lorie's truthfulness because K-mart waived its objections with respect to the admissibility of Dr. Villanueva's testimony when it failed to adequately respond to plaintiff's motion in limine in violation of Local Rule 7(b).

K-mart objects arguing that Rule 7(b) was not in effect at the time of their filing on October 17, 2001.

The Court agrees with K-mart.  The Magistrate Judge erred in its conclusion that Local Rule 7(b) was the applicable standard.  At the time K-mart filed it's opposition the applicable standard was Local Rule 311.2 which did not state, as Local Rule 7(b) does, that unless the opposing party files a written objection thereto,

Civil No. 98-1867(PG)                                                    7

incorporating a memorandum of law, the opposing party shall be
deemed to have waived objection.

    Although this does not alter our conclusion, we do not Adopt
the Magistrate Judge's recommendation regarding this matter.

    WHEREFORE, in light of the above, the Court ADOPTS and APPROVES
IN PART the Magistrate Judge's Report and Recommendation.
Accordingly, the Court GRANTS plaintiff's Motion in Limine.


_____In San Juan, Puerto Rico May 9, 2004.


                              ____S/ Juan M. Perez-Gimenez
                              **JUAN M. PEREZ-GIMENEZ**
                              **U.S. District Judge**