**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

```
JOSE M. LORIE-VELASCO,          *
ET AL.,                         *
     Plaintiffs,                *
                                *
          v.                    *     Civil No. 98-1867(PG)
                                *
K-MART CORPORATION, ET AL.,     *
     Third Party Plaintiffs     *
                                *
          v.                    *
                                *
GROUP SERVICE SYSTEM,           *
COOPERATIVA DE SEGUROS          *
MULTIPLES DE PUERTO RICO        *
     Third Party Defendants.    *
```

**OPINION AND ORDER**

Before the Court is Third Party Defendants' Motion for Summary Judgment (Docket No. 155). For the reasons set forth below, the Court grants Third Party Defendants' motion.

**DISCUSSION**

**I.  Factual Background**

On January 26, 1996, Group Service System (hereinafter "GSS"), through its representative Mr. Wilfredo Rivera Elias entered into a contract with K-mart Corporation (hereinafter "K-mart") to provide maintenance services to K-mart's Trujillo Alto store. (Docket No. 9 at 2.) GSS agreed to provide maintenance services at K-mart's Trujillo Alto store seven days a week from 10:00 p.m. to 6:00 a.m. In the morning before the store opened for business, a K-mart employee would inspect GSS's work to make sure the floors were in safe conditions.

On February 8, 1998 plaintiff José M. Lorie Velasco slipped and fell at K-mart's Trujillo Alto store. (Docket No. 113.) Mr. Lorie Velasco filed suit against K-mart claiming he fell due to the

Civil No. 98-1867(PG) 2

latter's negligent maintenance of its floors and that as a result of the accident he has experienced erectile dysfunction. (Docket No. 113.) Specifically, Mr. Lorie Velasco claims he fell because the floor was slippery. (Docket No. 113 at 5. )

K-mart filed a third party complaint against GSS and its insurer Cooperativa de Seguros Multiples de Puerto Rico's (hereinafter "CSMPR") claiming Mr. Lorie Velasco's fall was GSS's sole responsibility. (Docket No. 9)

GSS now moves for summary judgment claiming neither it or its insurer are liable to plaintiff inasmuch as at the time of the accident they were not in charge of the maintenance of the floor. K-mart untimely filed its response to GSS's motion[1]. The Court, therefore, considers GSS's motion as unopposed.

**II. Summary Judgment Standard**

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660 (1st Cir. 2000). To succeed,

---

[1] On March 31, 2004, in view the approaching trial date and the two years that had passed since the filing of third-party defendants' motion for summary judgment, the Court, through Magistrate Judge Delgado, gave defendants until April 15, 2004 to file its opposition to the motion for summary judgment. On April 15, K-mart requested and extension of time that was denied also in light of the approaching trail date. On April 30, 2004, K-mart filed a Motion for Reconsideration and tendered its untimely opposition. Upon reviewing the contents of K-marts' Motion for Reconsideration, as well as the contents of the tendered opposition, the Court denied K-mart's request for reconsideration. Thus, third-party defendants' motion is considered unopposed.

Civil No. 98-1867(PG)                                                          3

the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1 st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At the summary judgment juncture, there is "no room for the measured weighing of conflicting evidence", or for the injection of the judge's own conceptions of likelihood into the determination. Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1997). The Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). Nonetheless, when evaluating the evidence before it, the Court may safely ignore "conclusory allegations, improbable inferences and unsupported speculation." Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000).

Failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party. A District Court is nonetheless "obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991); see also Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991)(before granting an unopposed summary judgment motion,

Civil No. 98-1867(PG)                                                                 4

the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).

**II. Analysis**

K-mart claims that GSS is liable and solely responsible for Mr. Lorie Velasco's alleged accident due to GSS's failure to perform the maintenance services as outlined in its agreement with K-mart. (Third Party Complaint, Docket No. 9 at 2 ¶9.)

A review of the record, shows the following facts are undisputed:

1. GSS's work schedule to provide maintenance services at K-mart's Trujillo Store, including the day of the alleged accident, was from 10:00 p.m. to 5:00 or 6:00 a.m., seven days a week (Docket No. 113 at 24 ¶ 3; Docket No. 155, Exh. A at 4 ¶2.)

2. K-mart supplied all the materials GSS used to clean and provide maintenance to K-mart's Trujillo Alto store. (Docket No. 113 at 24 ¶¶1-2.) The materials used to clean the floors are classified as slip resistant. (Docket No. 113 at 24 ¶2.)

3. Upon completion of the maintenance work, one of the store managers or the employee opening the store would inspect the cleaning service provided by GSS in order to insure that the floors were in a safe condition before the store opened its doors for business. (Docket No. 113 at 24-25 ¶4.)

4. The inspection and approval by one of K-mart's store managers or employees was a daily standard operating procedure and GSS's work was not considered completed until such inspection and approval took place. (Docket No. 155 at 2 ¶2(d).)

4. On the day of the accident, the floor area where Mr. Lorie

Civil No. 98-1867(PG)                                                          5

Velasco claims he fell was not slippery at the time of the inspection when GSS completed its work. (Docket No. 115, Exh. A at 2 ¶4.)

    5.  From 6:00 a.m. to 10:00 p.m., K-mart has a maintenance crew to provide the maintenance of its floors. (Docket No. 155, Exh. A at 3 ¶7.)

    6.  Mr. Lorie Velasco alleges he fell around 4:30 p.m. (Docket No. 113 at 4 ¶4, Docket No. 115 at 1 at ¶1).

    7.  At the time of the accident, K-mart had sole custody, supervision and control over the store and its premises. (Docket No. 113 at 23.)

    8.  On August 21, 2000, Engineer David E. Cintron performed various representative coefficient of friction tests at the location where Mr. Lorie Velasco alleges he fell to determine whether the area was made of a material or covered by a clear or transparent substance which was alleged to be dangerously slippery. (Docket No. 155, Exhibit B at 1 ¶ 2.)

    9.  Because neither K-mart's attorney nor anyone else was able to identify the precise location of the alleged accident, and because Mr. Lorie Velasco alleged he fell in the sporting goods area, a number of representative coefficient tests were performed on four aisles where the sporting goods displays were located. (Docket No. 155, Exhibit B at 1 ¶ 3.)

    10.  The results of these tests showed that the floor surface exhibited a more than adequate and safe finish meeting and exceeding the Slip-Resistant Criteria established by Government Agencies and the Industry in general. (Docket No. 115, Exhibit B at 2 ¶ 4.)

    11.  Engineer David E. Cintron corroborated that the floor

Civil No. 98-1867(PG) 6

maintenance product used by K-mart's maintenance personnel is the floor coating product known as "Mirage", formulated by Masury Columbia, identified as an extra-durable, high-speed floor finish and bearing the Underwriters Laboratories, Inc.'s seal for its slip-resistant properties. (Docket No. 115, Exhibit B at 2 ¶5.)

12. Additionally, Engineer David E. Cintron has tested and evaluated the Mirage floor-finish product's slip-resistant properties on several occasions. The fact that the product makes the floor shiny is due to its light reflecting characteristics and has nothing to do with its slip-resistant properties. (Docket No. 115, Exhibit B at 2 ¶6.)

A review of these uncontested facts shows GSS had nothing to do with the supervision of the maintenance of the floor at the Trujillo Alto store at the time Mr. Lorie Velasco alleges he fell. Moreover, it is undisputed that the products used by GSS to clean the floors were provided by K-mart and are slip-resistant. K-mart fails to proffer evidence to support that GSS had any control over the conditions of the floors on February 8, 1998 at 4:30 p.m.

In sum, GSS has met its burden of demonstrating undisputed facts that it is not in any way liable to K-mart or plaintiff for any possible slippery conditions at K-mart's store at the time Mr. Lorie Velasco claims he fell.

**WHEREFORE**, in light of the foregoing, the Court **GRANTS** Third party defendants Motion for Summary Judgment and **DISMISSES WITH PREJUDICE** the Third Party Plaintiffs Complaint.

**In San Juan, Puerto Rico May 19, 2004.**

S/Juan M. Perez-Gimenez
**JUAN M. PEREZ-GIMENEZ**
**U.S. District Judge**